**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DISTRICT AT YOUNGSTOWN**

| | |
|---|---|
| **MICHAEL RESE**, <br> 3857 Allenwood Dr. SE <br> Warren, OH 44484 | Case No. |
| | Judge |
| and | **COMPLAINT FOR DAMAGES** |
| **NICOLE RESE**, <br> 3857 Allenwood Dr. SE <br> Warren, OH 44484 | **JURY DEMAND ENDORSED HEREON** |
| Plaintiffs, | |
| vs | |
| **PHH MORTGAGE CORPORATION** <br> **d/b/a PHH MORTGAGE SERVICES**, <br> c/o Corporation Service Company <br> 50 W. Broad St., Ste. 1330 <br> Columbus, OH 43215 | |
| Defendant. | |

Plaintiffs Michael Rese and Nicole Rese (collectively, the "Reses"), through counsel, for their Complaint against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH"), state:

**PARTIES, JURISDICTION, AND VENUE**

1.     The Reses are the owners of residential real property, located at and commonly known as 3857 Allenwood Dr. SE, Warren, OH 44089 (the "Home"), which they have occupied as their primary, principal residence for all times relevant to the Complaint.

2.     PHH is the servicer of a note executed by each of the Resess (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan"). The Loan is attached as **Exhibit 1**.

3.      Upon information and belief, non-party Federal National Mortgage Association (FNMA) is the current owner of the Loan. FNMA has been the owner of the Loan at all times relevant to the allegations in this Complaint.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

5.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

6.      This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

7.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

8.      Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

9.      Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing''

10.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

11.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

12.     The Reses assert claims for relief against PHH for violations of the specific rules under Regulation X, as set forth, *infra*.

13.     The Reses have a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## **FACTUAL BACKGROUND**

14.     On or about August 1, 2018, the Reses encountered financial difficulty and defaulted on the Loan.

15.     On December 20, 2018, PHH initiated a foreclosure action against the Reses in the Trumbull County Court of Common Pleas, Case No. 2018 CV 02249 (the "Foreclosure"). A copy of the docket sheet for the Foreclosure is attached as **Exhibit 2**

16.     On February 19, 2019, the Reses, through counsel, filed their answer to PHH's foreclosure complaint. *See,* Exhibit 2

---

by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans." 78 Fed. Reg. 10696, 10739.

17.     On or about February 20, 2019, the Reses, through counsel, sent three (3) separate requests for information (the "RFIs") via Certified Mail to PHH at the address PHH designated for the receipt of notices of error and requests for information pursuant to 12 C.F.R. § 1024.35(c) and 12 C.F.R. § 1024.36(b), respectively (the "Designated Address"), specifically:

a.  A request for information pursuant to 12 C.F.R. § 1024.36 ("RFI #1") requesting information and/or documents related to the loan, specifically, a life of loan transaction history, servicing notes, any broker's price opinions, the physical location of the original note, a copy of the original note, information related to the custodian of the collateral file, PHH's two most recent analyses; and a reinstatement quote;

b.  A request for information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) ("RFI #2"); and,

c.  A request for information pursuant to 12 C.F.R. § 1024.36 requesting information related to loss mitigation ("RFI #3").

A copy of RFI #1 with tracking information from the website for the United States Postal Service (USPS) (www.usps.com) is attached as **Exhibit 3**; a copy of RFI #2 with tracking information from the website for the USPS (www.usps.com) is attached as **Exhibit 4**; and, a copy of RFI #3 with tracking information from the website for the USPS (www.usps.com) is attached as **Exhibit 5**.

18.     PHH received the RFIs at the Designated Address on February 25, 2019. *See,* id.

19.     On March 13, 2019, PHH sent a response to RFI #1 and RFI #2, but not RFI #3 (the "RFI Response"). A copy of the RFI Response is attached as **Exhibit 6**.

20.     Further, the RFI Response inaccurately claimed that Ocwen Loan Servicing, LLC ("Ocwen") was the investor for the Loan. *See,* id.

21.     On or about April 19, 2019, the Reses, through counsel, sent a notice of error ("NOE #1") via Certified Mail to PHH at the Designated Address. A copy of NOE #1 with tracking information from the website for the USPS (www.usps.com) is attached as **Exhibit 7**.

22.     Through NOE #1, the Reses informed PHH that it did not provide the requested information related to loss mitigation in response to RFI #3. *See,* id.

23.     PHH received NOE #1 at the Designated Address on April 29, 2019. *See,* id.

24.     On June 5, 2019, PHH sent a response to NOE #1 (the "NOE #1 Response"). A copy of the NOE #1 Response is attached as **Exhibit 8**

25.     Through the NOE #1 Response, PHH strangely states that no error had occurred but attaches "documents and/or the paper work related to loss mitigation from January 10, 2014 until present date." *See,* id.

26.     On September 16, 2019, the Foreclosure was stayed for loss mitigation review. *See,* Exhibit 2.

27.     On or about September 27, 2019, PHH approved the Reses for a Trial Period Plan under the Flex Modification program (the "TPP").

28.     On or about October 1, 2019, the Reses, through counsel, sent a second notice of error ("NOE #2") via Certified Mail to PHH at the Designated Address. A copy of NOE #2 with tracking information from the website for the USPS (www.usps.com) is attached as **Exhibit 9**.

29.     Through NOE #2, the Reses allege that PHH failed to properly respond to RFI #2 and failed to provide the Reses with accurate information related to loss mitigation options and foreclosure. *See,* id.

30.     Through NOE #2, the Reses allege that PHH failed to provide the Reses with a streamlined Trial Plan Offer pursuant to FNMA guidelines. If PHH had followed FNMA guidelines, it would have sent the Reses a solicitation for a Flex Modification when the Reses were between ninety (90) and one hundred five (105) days delinquent on the Loan. *See,* id.

31.     Had PHH offered a Flex Modification to the Reses, the Foreclosure would have been avoided.

32.     PHH received NOE #2 at the Designated Address on October 4, 2019. *See,* id.

33.     From October 4, 2019 to December 5, 2019, PHH failed to provide a response to NOE #2 to the Reses.

34.     On or about December 5, 2019, the Reses, through counsel, sent a third notice of error ("NOE #3") via Certified Mail to PHH at the Designated Address. A copy of NOE #3 with tracking information from the website for the USPS (www.usps.com) is attached as **Exhibit 10**.

35.     Through NOE #3, the Reses alleged that PHH failed to timely respond to NOE #2. *See,* id.

36.     PHH received NOE #3 at the Designated Address on December 10, 2019. *See,* id.

37.     On or about December 17, 2019, PHH sent a response to NOE #3 (the "December 2019 Response"). A copy of the December 2019 Response is attached as **Exhibit 11**.

38.     Through the December 2019 Response, PHH confirms that the owner at that time was FNMA, not Ocwen Loan Servicing, LLC. *See,* id.

39.     On or about January 9, 2020, PHH sent a second response to NOE #3 (the "January 2020 Response"). A copy of the January 2020 Response is attached as **Exhibit 12**.

40.     Through the January 2020 Response, PHH ignores the errors asserted by NOE #2 and NOE #3 and instead provides information that it should have included with the RFI Response back in March of 2019. *See,* id.

41.     After the Reses accepted the TPP and made all the required payments, on or about January 22, 2020, PHH sent the Reses a permanent modification agreement (the "Modification").

42.     On or about February 6, 2020, the Reses accepted and executed the Modification and submitted the executed Modification, as instructed, to PHH.

43.     On March 12, 2020, the foreclosure court dismissed the Foreclosure. *See,* Exhibit 2.

## IMPACT UPON AND DAMAGES SUFFERED BY THE RESES

44.     Due to PHH's actions, the Reses were unnecessarily held in a delinquent status on the Loan for a longer period of time than they would have been otherwise and have subsequently suffered unwarranted harm to their credit rating and a significant delay in the rehabilitation of their credit for which they have not received proper redress from PHH.

45.     PHH's improper actions have further caused the Reses to suffer from other damages including:

    a.  Legal fees and expenses to submit requests for information and notices of error to PHH in an attempt obtain information and seek PHH's compliance with the terms of state and federal law and regulations, as well as mortgage servicing guidelines;

    b.  Legal fees to defend against the Foreclosure Case that would not have been filed or continued for as long as it had but for PHH's actions in mishandling the

loss mitigation, information request, and error resolution processes in violation of RESPA and Regulation X and mortgage servicing guidelines.

c. Improper fees and charges imposed on the Loan due to the unnecessarily continued default and the Foreclosure Case, some of which have since been capitalized into the unpaid principal balance of the Loan pursuant to the Modification;

d. Severe emotional distress driven by PHH's actions and by fear that PHH's refusal to properly handle the loss mitigation and error resolution processes related to the Loan would result in a foreclosure judgment in the Foreclosure and the subsequent loss of their Home, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress; and,

e. Increased costs and payments due under the Modification as the delay in the Modification caused additional amounts to be capitalized to the modified principal balance of the Loan that the Reses must now pay back with interest and which has resulted in a higher monthly payment than they would have otherwise been obligated to pay.

46.     Had PHH properly handled the error resolution process in relation to the Loan and corrected the errors pursuant to the same, the Reses would have been put in the place they should have been but for PHH errors, but PHH has failed to make things right.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY PHH**

47.     PHH's actions are part of a pattern and practice of behavior in violation of the Reses' rights and in abdication and contravention of PHH's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

48.     As of the filing of this Complaint, PHH has had Seven Hundred Seventy Six (776) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-reseraach/consumer-complaints/.

49.     As of the filing of this Complaint, PHH has had Seven Hundred Forty Four (744) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-reseraach/consumer-complaints/.

50.     The Reses have reviewed the CFPB's consumer complaint database and have identified other similar alleged RESPA violations by PHH against other borrowers. In particular, the Reses have reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 13**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that PHH has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE:
## VIOLATIONS 12 C.F.R. § 1024.36(d) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to timely and properly respond to RFI #2 and RFI #3)

51.     The Reses restate and incorporate all of the statements and allegations contained in paragraphs 1 through 50 in their entirety, as if fully rewritten herein.

52.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

53.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

54.     A servicer must respond to a request for information by:

(i)     Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii)    Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

55.     Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:
(A)    Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an

information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

56.    "A servicer of a federally related mortgage shall not … fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan." 12 U.S.C. § 2605(k)(1)(D).

57.    "A servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

58.    RFI #2 and RFI #3 each meet the definition of a request for information as defined by 12 C.F.R. § 1024.36(a) because they each contain the Reses' name, loan number, property address, and request information related to the Loan. *See*, Exhibits 4 and 5.

59.    The Reses sent RFI #2 and RFI #3 to PHH at the Designated Address and PHH received RFI #2 and RFI #3 at the Designated Address. *See*, id.

60.    PHH was to provide the identity of, and address or other relevant contact information for, the owner or assignee of the Loan as the Reses requested through RFI #2 within ten (10) business days of their receipt of RFI #2, or on or before March 10, 2020. *See*, Exhibit 4; *see also,* 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d)(2)(i)(B).

61.    PHH was required to provide written correspondence to the Reses in response to the information requested through RFI #3 within thirty (30) business days of their receipt of RFI #3. *See*, Exhibit 5; *see also*, 12 C.F.R. § 1024.36(d)(2)(i)(B) and 12 U.S.C. § 2605(e)(2).

62.     PHH did not send any correspondence containing or otherwise consisting of a substantive response to RFI #2 to the Reses or their counsel within ten (10) business days of receipt of RFI #2.

63.     PHH sent the RFI Response thirteen (13) business days after their receipt of RFI #2. *See*, Exhibits 4 and 6.

64.     In addition to PHH failing to send the RFI Response in a timely manner as to RFI #2, PHH provided incorrect information and failed to properly identify and send proper contact information for the owner or assignee of the Loan—incorrectly claiming that Ocwen, not FNMA, was the owner of or investor for the Loan. *See*, Exhibit 6.

65.     PHH's actions in failing to properly and timely respond to RFI #2 are in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(D).

66.     PHH did not send any correspondence containing or otherwise consisting of a substantive response to RFI #3 to the Reses or their counsel within thirty (30) business days of receipt of RFI #3.

67.     PHH's actions in failing to properly and timely respond to RFI #3 are in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. §§ 2605(e) and (k)(1)(E).

68.     PHH's actions in failing to timely and accurately respond to RFI #2 caused the Reses to suffer actual damages as further outlined, supra, specifically including legal fees and costs to have counsel prepare and send NOE #2 to PHH, which would not have been necessary but for PHH's failure to time and accurately respond to RFI #2.

69.     PHH's actions in failing to timely respond to RFI #3 caused the Reses to suffer actual damages as further outlined, supra, specifically including legal fees and costs to have

counsel prepare and send NOE #1 to PHH, which would not have been necessary but for PHH's failure to timely respond to RFI #3.

70.     PHH's actions are part of a pattern and practice of behavior in conscious disregard for the Reses' rights.

71.     PHH's conduct as pled, <u>supra</u>, shows a conscious disregard for the Reses' rights.

72.     As a result of PHH's actions, PHH is liable to the Reses for statutory damages and actual damages as further described, <u>supra</u>. 12 U.S.C. § 2605(f)(1).

73.     Additionally, the Reses request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**<u>COUNT TWO:</u>**
**VIOLATIONS 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)**

**(Failure to timely and properly respond to NOE #1, NOE #2, and NOE #3)**

74.     The Reses restate and incorporate all of the statements and allegations contained in paragraphs 1 through 50 in their entirety, as if fully rewritten herein.

75.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

76.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

77.     A servicer must respond to a notice of error by either:

(A)     Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact

information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

78. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

79. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

80. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

81. NOE #1, NOE #2, and NOE #3 (collectively, the "NOEs") each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that

asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibits 7, 9, and 10.

82.     The Reses sent each of the NOEs to PHH at the Designated Address and PHH received each such notice at such address. *See*, id.

83.     The Reses, through NOE #1, alleged that PHH committed an error in relation to the Loan by failing to properly respond to RFI #3. *See*, Exhibit 7.

84.     PHH sent NOE #1 Response to the Reses on or about June 5, 2019. *See*, Exhibit 8.

85.     NOE #1 Response did not fulfill PHH's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as PHH did not admit that any errors occurred as alleged in NOE #1. *See*, id.

86.     NOE #1 Response did not fulfill PHH's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the face of NOE #1 that PHH did not perform a reasonable investigation into the errors alleged through NOE #1 prior to determining that no such errors occurred. *See*, id.

87.     PHH's failure to respond to perform reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, the Reses have each suffered actual damages as detailed, supra.

88.     Through NOE #2, the Reses alleged that PHH failed to properly respond to RFI #2 and failed to provide the Reses with accurate information related to loss mitigation options and foreclosure. *See* Exhibit 9.

89.     Through NOE #2, the Reses further alleged that PHH failed to provide the Reses with a streamlined Trial Plan Offer pursuant to FNMA guidelines. If PHH had followed FNMA

guidelines, it would have sent the Reses a solicitation for a Flex Modification when the Reses were between ninety (90) and one hundred five (105) days delinquent on the Loan. *See* id.

90.     PHH received NOE #2 at the Designated Address on October 4, 2019. *See* id.

91.     From October 4, 2019 to December 5, 2019, PHH failed to provide a response to NOE #2 to the Reses.

92.     PHH failed to respond to NOE #2 within thirty (30) business days of its receipt of the same as required by 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) which constitutes a separate violation of the same.

93.     PHH's failure to respond to perform reasonable investigation into and otherwise properly respond to the errors alleged through NOE #2 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, the Reses have each suffered actual damages as detailed, supra, inducing, but not limited to legal fees and costs incurred with sending NOE #3 which would not have been necessary but for PHH's failure to respond to NOE #2.

94.     Through NOE #3, the Reses alleged that PHH committed an error in relation to the Loan by failing to timely respond to NOE #2 *See*, Exhibit 10.

95.     PHH sent the December 2019 Response and the January 2020 Response (collectively "NOE #3 Response") to the Reses in response to NOE #3.  *See*, Exhibits 11 and 12.

96.     Through the NOE #3 Response, PHH confirms that the owner of the Loan was FNMA, not Ocwen Loan Servicing, LLC, and otherwise ignores the errors asserted by NOE #2 and NOE #3 and instead provides information that it should have included with the RFI Response back in March of 2019. *See*, id.

97.     NOE #3 Response did not fulfill PHH's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as PHH did not admit that any errors occurred as alleged in NOE #1. *See*, id.

98.     NOE #3 Response did not fulfill PHH's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the face of NOE #3 Response that PHH did not perform a reasonable investigation into the errors alleged through NOE #3 prior to determining that no such errors occurred as it wholly failed to address the errors asserted therein. *See*, id.

99.     PHH's failure to respond to perform reasonable investigation into and otherwise properly respond to the errors alleged through NOE #3 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, the Reses have each suffered actual damages as detailed, supra.

100.    PHH's actions are part of a pattern and practice of behavior in conscious disregard for the Reses' rights.

101.    PHH's conduct as pled, *supra*, shows a conscious disregard for the Reses' rights.

102.    As a result of PHH's actions, PHH is liable to the Reses for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

103.    Additionally, the Reses request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## **PRAYER FOR RELIEF**

Michael Rese and Nicole Rese respectfully request that this Court enter an order granting Judgment against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services for the following:

A.     For actual damages in an amount to be determined at trial;

B.     For statutory damages of Two Thousand Dollars ($2,000.00) for each of the five (5) violations of RESPA contained in Count One and Two for a total of Ten Thousand Dollars ($10,000.00);

C.     For reasonable attorneys' fees and costs; and,

D.     For all other relief this Court may deem just and proper.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Whitney P. Horton (0098224)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com

*Counsel for Plaintiffs Michael and Nicole
Rese*

## JURY DEMAND

Plaintiffs Michael Rese and Nicole Rese hereby respectfully demand a trial by jury on all

such claims that may be so tried.

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Whitney P. Horton (0098224)
Dann Law

*Counsel for Plaintiffs Michael and Nicole
Rese*